# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

EUGENE RUSSELL,
      Petitioner,

     v.

JOHN ARMSTRONG,
      Respondent.

CIVIL ACTION NO.
3:00cv1116 (SRU)

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Eugene Russell, an inmate in the custody of the State of Connecticut, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his state court conviction on the grounds that he was denied his right to counsel under the Sixth and Fourteenth Amendments. Specifically, Russell alleges that he was denied effective assistance of counsel because his trial attorney labored under an actual conflict of interest as a result of the "inappropriate and prejudicial comments" he made to a corrections officer. Amend. Petition at 2, ¶ 12.

I conclude that the state court that considered Russell's habeas petition: (a) reasonably applied the proper federal standard, and (b) based its conclusion that Russell's trial attorney was not laboring under a conflict of interest on a reasonable determination of the facts in light of the evidence before it. *See* 28 U.S.C. § 2254(d)(1). Russell's petition for a writ of habeas corpus is, therefore, denied.

## I.    Background

Russell was charged in Connecticut state court in two separate cases stemming from the alleged sexual and physical assault of his stepdaughter. The cases were consolidated for trial. *State v. Russell*, Docket No. CR8-83588 (Conn. Super. June 30, 1989); *State v. Russell*, Docket

No. CR8-87222 (Conn. Super. June 30, 1989).

Attorney Wayne Sadick was appointed  as a Special Public Defender to represent Russell at trial.  At one point during the course of the trial, Russell requested to address the trial court personally.  The following colloquy took place:

> THE DEFENDANT:  Your Honor, on the way back to Somers last night one of the CO's informed me that my attorney said to him that he should stop the truck on the side of the road and let me run and they'd shoot me. . . .  I feel I'm getting an unfair trial and my attorney is not capable of representing me.  I feel that you forced him to take this case.

> THE COURT:  Who did?

> THE DEFENDANT:  You did.

> THE COURT:  I forced your lawyer to take this case?

> THE DEFENDANT:  Right.  He informed you on two separate occasions that he was not prepared and needed continuances.  They were not granted and now he's making statements that the van driver should stop and let me run and shoot me.  Okay.  I cannot believe that this man has my best interest at heart because of this and I would like this on the record.

> THE COURT:  Mr. Sadick, what about the remarks, alleged remarks to the Corrections Officers?

> MR. SADICK:  For the record, the exact content of the statement was not that, I was kidding around and joking around with the Corrections Officer.  I did not suggest that they stop the car.  I just said in the event of Mr. Russell making an attempt, and it was just in jest and fun due to the outburst during the court that required the Court to call recess yesterday.  It was not meant literally at all.

> THE COURT:  Well, Mr. Russell, apparently your lawyer's facetious remarks in jest to the officers were then reported to you by the officers but not telling you that it was in jest.  You really seriously believe that he was advising the Correction Officers to shoot you?

> THE DEFENDANT:  I really believe that's what he said.  I believe people say with their mouth what they intend.

-2-

          THE COURT:  Anything else, sir?

          THE DEFENDANT:  No.

          THE COURT:  Thank you.  You may sit down.

Trial Transcript, Appendix C to Defs. Response (doc. # 30) at A1-A3.

      The trial then proceeded, and Sadick continued to represent Russell.  The jury convicted

Russell of assault, risk of injury to a minor, and sexual assault.  He was sentenced to a total

effective sentence of fifty years.

      Russell's conviction was upheld on direct appeal.  *State v. Russell*, 25 Conn. App. 243,

*cert. denied*, 220 Conn. 911 (1991).  When his appeals were exhausted, Russell filed a petition

for a writ of habeas corpus in state court.  After an evidentiary hearing, the state habeas court

denied the petition.[1]  *Russell v. Warden, State Prison*, 1996 WL 512530 (Conn. Super. Aug. 29,

1996).

      With respect to the alleged conflict of interest, Russell provided the following testimony

at the evidentiary hearing:

> Q:     During the course of the trial, did you become aware of any conflict of
> interest that Attorney Sadek [sic] may have concerning his representation of
> you?
>
> A:     A conflict of interest?
>
> Q:     Yeah.
>
> A:     I was transported back to the prison one night after trial, and I was

---

[1] Russell, his wife, and Patricia Buck Wolf, the attorney who represented Russell immediately prior to Sadick, testified at the evidentiary hearing.  Hearing Transcript, Appendix H to Defs. Response (doc # 30).  Transcripts from the criminal trial and a related juvenile court proceeding were admitted into evidence.  Sadick died prior to the evidentiary hearing.  *Id.* at 12-13.

told by one of the prison officers that his exact words, Could have had your attorney's job today, and I asked him what he was talking about, and he explained to me that Mr. Sadek [sic] had told him that when they transport me back to the prison they should stop the van and let me out to take a leak and shoot me in the back and just say I was trying to escape.

Q:     Okay.  And you called that to the Court's attention the next day?

A:     Yes.

There was no further evidence regarding the effect of the statements on Russell, on Sadick's representation of him, or on their attorney-client relationship.

Russell appealed the dismissal of his habeas petition, and the Connecticut Appellate Court dismissed the appeal.  *Russell v. Commissioner of Correction*, 49 Conn. App. 52, *cert. denied*, 247 Conn. 916 (1998).  The United States Supreme Court denied certiorari.  *Russell v. Armstrong*, 525 U.S. 1161 (1999).  Having exhausted his state remedies, Russell initiated the present proceeding by filing a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254.

On November 16, 2001, Russell filed an amended petition, grounded solely on his claim of ineffective assistance of counsel.  He alleges only that Sadick's remarks caused an actual conflict of interest and argues that the comments resulted in a "breakdown in communications and complete erosion of trust" between Russell and Sadick that "necessarily adversely affected counsel's performance."  Pet'r. Memo. Supp. Amend. Petition for Habeas Corpus (doc. # 32) at 20-21.

**II.     Standards**

-4-

A.      Standard of Review under AEDPA

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), significantly amended section 2254.  The amendments of AEDPA place "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Under section 2254(d)(1), a federal court may only grant a writ of habeas corpus when the state court's adjudication of the prisoner's claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1).

A decision is contrary to clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693 (2000).  A state court decision is an unreasonable application of clearly established federal law "if the state court correctly identifies the governing legal principle from the [Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id.*  When considering the unreasonable application clause, the focus of the inquiry "is on

whether the state court's application of clearly established federal law is objectively reasonable." *Id.* The Supreme Court has emphasized that "an unreasonable application is different from an incorrect one." *Id.* In *Williams*, the Court stressed that a federal court may not issue a writ of habeas corpus under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 411. When reviewing a section 2254 petition, the court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*

      B.    <u>Ineffective Assistance of Counsel</u>

      The Sixth Amendment, applied to the states through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Supreme Court has long recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), and that "there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

      Russell alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney made "inappropriate and prejudicial comments," thereby creating an actual conflict of interest between attorney and client. Amend. Petition at 2, ¶ 12.

      Ineffective assistance of counsel claims are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "[T]he rule set forth in *Strickland* qualifies as clearly established federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 391.  To prevail under *Strickland*, Russell must show: (1) that his counsel's representation "fell below an objective standard of reasonableness" established by prevailing professional norms, and (2) that the attorney's performance caused prejudice to the petitioner. *Id.* at 688, 692.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

First, with respect to attorney conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702.  Moreover, the burden rests on the accused to demonstrate a constitutional violation.  *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Second, to satisfy the prejudice prong, Russell must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

C.    Conflicts of Interest

With respect to the second prong of *Strickland*, the Supreme Court has acknowledged that "[o]ne type of actual ineffectiveness claim warrants a  . . . presumption of prejudice." *Id.* at 692. Citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Court noted that "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Id.*  The Court further elaborated that the rule is not a *per se* one.  Rather, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350).

The "actual conflict" and "adverse effect" analyses are not distinct since "an 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."   *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002).  *See also Eisemann v. Herbert*, 401 F.3d 102, 107 (2d Cir. 2005).

In *Sullivan*, the Supreme Court considered – in the context of multiple representation – when an attorney's conflict of interest violated the Sixth Amendment.  A conflict of interest refers to a "division of loyalties that affected counsel's performance."  *Id.*  Lower courts have held that the *Sullivan* standard is not limited to the context of multiple representation, but also applies when "the asserted conflict is between the interests of the defendant and those of his attorney." *United States v. White*, 174 F.3d 290, 295 (2d Cir. 1999).  *But cf. Tueros v. Greiner*, 343 F.3d 587, 594 (2d Cir. 2003) (noting that courts have commonly held that *Strickland*, rather than *Sullivan*, applies to cases in which a petitioner alleges a conflict between the client's interests and the lawyer's self-interests).  Given the standard of section 2254(d)(1), *i.e.*, clearly established federal law, as determined by the United States Supreme Court, it is significant that the Supreme Court has not extended "the *Sullivan* prophylaxis" to cases other than those involving concurrent, multiple representation.  *See Mickens*, 535 U.S. at 174-76 (noting that, although lower courts have applied *Sullivan* "unblinkingly" to all kinds of alleged attorney ethical conflicts, the question of *Sullivan*'s applicability to such cases remains an open question before the Supreme Court).  *But cf. Tueros*, 343 F.3d at 594 (noting that, despite *Mickens*' *dicta* regarding the scope of *Sullivan*, a court must look to *Sullivan* itself for purposes of section 2254(d) to determine whether it would be unreasonable not to extend *Sullivan*'s definition of "actual conflict").

In *Tueros*, the petitioner's trial attorney believed she had a conflict interest based on her perceived attorney-client relationship with a subpoenaed witness who had interests divergent from those of the defendant. The Court of Appeals addressed whether a purely subjective conflict of interest was necessarily an "actual conflict," meriting a presumption of prejudice under *Sullivan*. The Court held that it was "not unreasonable to conclude that multiple representation – or a similar relationship – is a required precondition of an actual conflict." *Tueros*, 343 F.2d at 595.

## III.    Discussion

Russell claims that the adjudication of the state habeas court resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law because the court did not consider Supreme Court precedent regarding the presumption of prejudice in cases of actual conflicts of interest. He also alleges that the state habeas court based its decision on an unreasonable determination of facts in finding that there were no adverse interests between Russell and Sadick, no breach of loyalty, and no conflict of interest.

In assessing Russell's ineffective assistance of counsel claims, the state habeas court applied *Strickland*'s two-pronged standard. *Russell*, 1996 WL 512620 at *3. The *Strickland* standard is clearly established federal law and the appropriate legal principle governing claims of ineffective assistance of counsel.

The state habeas court also addressed Russell's claim of a conflict of interest using state standards even broader than *Sullivan*'s, but concluded that there was not an actual conflict of

interest between Russell and his attorney despite Sadick's inappropriate comments.[2] *Id.* at \*8.
The court noted that Russell had "pointed to no adverse interests and no breach of loyalty by
Attorney Sadick." *Id.*  Accordingly, the state habeas court's finding that no actual conflict
resulted from Sadick's comments is not contrary to or an unreasonable application of clearly
established federal law.  It is not unreasonable to conclude that *Sullivan*'s holding and
presumption of prejudice does not extend to an attorney who makes inappropriate, out-of-court
comments regarding his client to a corrections officer.  As the Second Circuit noted in *Tueros*, it
is not unreasonable to conclude that multiple representation or a similar relationship is a
"required precondition of an actual conflict" under *Sullivan*.  343 F.2d at 595.

    Accordingly, the issues to resolve are: (1) whether the state habeas court reasonably
applied the *Strickland* standard to the facts of Russell's particular case, and (2) whether the court
based its decision that there was no actual conflict of interest on an unreasonable determination
of the facts.

    For Russell to prevail under the *Strickland* test, he must demonstrate both deficient
performance and actual prejudice.  First, Russell must demonstrate that Sadick made errors so
serious that he was not functioning as the counsel guaranteed by the Sixth Amendment.  Second,
Russell must show that there exists a reasonable probability that, but for Sadick's unprofessional
errors, the result of his criminal case would have been different.  To benefit from *Sullivan*'s
presumption of prejudice, Russell must first demonstrate an actual conflict of interest, *i.e.*, a

---

[2] It is not necessary for a state court to cite or even be aware of Supreme Court cases "so
long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v.
Packer*, 537 U.S. 3, 8 (2002).

division of loyalties that adversely affected Sadick's performance.  *Strickland*, 466 U.S. at 692.

        1.    *Attorney Conduct*

In his amended habeas petition, Russell claims that Sadick's legal assistance was inadequate based on the inappropriate comments Sadick made to a corrections officer following a day of trial.[3]  Although he does argue that, as a result of the comments, the "breakdown in communications and complete erosion of trust" between Russell and Sadick "necessarily adversely affected counsel's performance," Russell does not otherwise claim that Sadick's representation was deficient.  Pet'r. Memo. Supp. Amend. Petition for Habeas Corpus (doc. # 32) at 20-21.  Russell also appears to argue that his distaste for his attorney implicates his Sixth Amendment rights.[4]

Russell cites *Frazer v. United States*, 18 F.3d 778, 783 (9th Cir. 1994), apparently for the proposition that once he learned of his attorney's comments, "[a]ll advice, assistance, and guidance provided . . . would be fatally suspect, as would the 'willingness' of a defendant to follow the attorney's lead."  18 F.3d at 783.  The defendant in *Frazer* alleged that his appointed lawyer called him to his face a "stupid nigger son of a bitch" and threatened to provide substandard assistance if the defendant did not plead guilty.  *Id.*  The Court of Appeals reversed

___

[3] In his brief, Russell explained that his "claim is circumscribed to one passing . . . interchange within the criminal trial."  Pet'r. Memo. Supp. Amend. Petition for Habeas Corpus (doc # 32) at 2 n.1.

[4] To the extent Russell argues that the Sixth Amendment guarantees him an attorney whom he likes, there is no such right.  The Supreme Court has held that the Sixth Amendment does not guarantee a "meaningful relationship" between an accused an his counsel.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  *See also Wheat v. United States.*, 486 U.S. 153, 159 (1988) (noting that "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers").

-11-

and remanded the District Court's denial of a motion to vacate with instructions to hold an evidentiary hearing on the defendant's ineffective assistance claim. The facts and procedural posture of *Frazer* are distinguishable from Russell's petition. Sadick did not verbally assault Russell, and he did not threaten substandard assistance. In addition, Russell has had an opportunity to prove his allegations regarding Sadick's conduct during an evidentiary hearing. During the hearing, Russell pointed only to the remarks made to the corrections officer – spoken outside Russell's presence – and offered no evidence regarding a "breakdown in communication" or "complete erosion of trust."

Sadick's comments alone do not demonstrate that his representation was objectively unreasonable. Accordingly, the state habeas court's determination that Sadick's performance was satisfactory was not unreasonable given the evidence presented during that proceeding.[5]

### 2.   *Actual Prejudice*

Moreover, even if Russell were able to establish that his trial counsel's performance fell outside the range of reasonableness determined by prevailing professional norms, Russell must also satisfy the second prong of the Strickland test: actual prejudice.

Russell does not argue that he was, in fact, prejudiced; that is, he does not argue that but for Sadick's errors, the result of the trial would have been different. Rather, he argues that the court should entertain a presumption of prejudice under *Sullivan* due to Sadick's alleged conflict of interest. In order to benefit from *Sullivan*'s presumption of prejudice, Russell still must establish that Sadick, in fact, labored under an actual conflict of interest. To establish that there

---

[5]  The state habeas court also considered several additional allegations of ineffective assistance and ruled that the attorney's representation was not deficient with respect to those claims. Russell has not raised those further claims in his section 2254 petition.

was an actual conflict of interest, Russell must show that Sadick's representation was adversely

affected by the alleged division of loyalties.  *Sullivan*, 446 U.S. at 348.  *See also Mickens*, 535

U.S. at 172 n.5 ("[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest

that adversely affects counsel's performance").

　　　With respect to Sadick's comments and the alleged conflict of interest, the state habeas

court found:

> The petitioner is correct in his assertion that counsel made inappropriate
> comments regarding the petitioner.  Following jury selection, the State
> commenced the presentation of evidence on June 14, 1989. On June 21, 1989,
> during the testimony of Alan Shulik, Ph.D, there was an outburst from the
> petitioner. (T.30-34, June 21, 1989.) On the following day, and in the absence
> of the jury, the petitioner reported to the court that a corrections officer had
> told him that Attorney Sadick had told the officer at the end of the day on
> June 21st that on transporting the petitioner back to the correctional
> institution they should stop the truck, let the petitioner run, and then shoot
> him. (T.3-5, June 22, 1989.) Attorney Sadick explained to the court that he
> made such comments, though not exactly as reported by the petitioner, in jest
> and in the context of his in-court outburst the day beforehand. (*Id*.) While
> these comments were clearly improper, there is no evidence that any member
> of the jury was ever made privy to them. They did not prejudice the
> petitioner. Counsel's vigorous defense of this difficult client during trial
> belies the assertion that he had a conflict of interest.
>
> In his brief, counsel for the petitioner belatedly claims that these comments
> represent the existence of a legal conflict of interest between Attorney Sadick
> and the petitioner. A legal conflict of interest has been defined as
> encompassing, "every interest that will adversely affect either the judgment or
> loyalty of a lawyer to a client, whether it be a conflicting, inconsistent,
> diverse, or other interest." *Weiss v. Statewide Grievance Committee*, 227
> Conn. 802, 814 (1993).  Additionally, conflict of interest between an attorney
> and client has been held to be present ". . . where one party in interest stands
> to gain significantly by adducing evidence, advancing arguments, or engaging
> in conduct that is detrimental to the interests of another party." *Phillips v.
> Warden*, 220 Conn. 112, 126 (1991).  In a constitutional sense, the right to
> counsel is implicated by the existence of an actual conflict of interest because
> "counsel has breached the duty of loyalty . . . ." *Id.*, 133.  In this instance, the
> petitioner has pointed to no adverse interests and no breach of loyalty by

-13-

Attorney Sadick. The court takes these off-hand comments to a corrections officer as more the product of Attorney Sadick's frustration due to the petitioner's self destructive in-court outbursts the day before than any malicious intent on his part. While they do not glorify the memory of this now deceased attorney, standing alone they do not prove the existence of an actual conflict of interest.

*Russell*, 1996 WL 512620 at *7-8.

The habeas court's factual finding that there was no actual conflict of interest is not unreasonable in light of the evidence before it. Accordingly, there was no basis on which to presume prejudice.

**IV.    Conclusion**

The state habeas court that considered Russell's petition found that Sadick's representation was not deficient and that there was no conflict of interest between Russell and his attorney. Thus, it held that Russell's Sixth Amendment right to counsel was not violated despite his trial attorney's inappropriate remarks to a corrections officer. Because the state habeas court applied the correct standard to Russell's habeas petition, reasonably applied the facts of his case to that standard, and based on its conclusion on a reasonable determination of the facts, Russell is not eligible for habeas relief under 28 U.S.C. § 2254.

Finally, because Russell has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I will not issue a certificate of appealability.

Russell's amended petition for a writ of habeas corpus (doc. # 25) is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 2d day of February 2006.

/s/ Stefan R. Underhill
    Stefan R. Underhill
    United States District Judge